## J. S. SNEED, Plaintiff in Error, v. E. K. SNEED, Defendant in Error.

1. APPEAL AND ERROR—FINDINGS—EVIDENCE.—The rule that findings of the trial court on conflicting evidence will not be disturbed on appeal does not apply where there is a substantial failure of the evidence to support the findings.

2. DIVORCE—JURISDICTION—RESIDENCE—"ACTUAL BONA FIDE RESIDENT." "An actual *bona fide* resident," within Revised Statutes of 1901,

paragraph 3114, providing that no suit for divorce shall be main-
tained unless the plaintiff has been an actual *bona fide* resident of
the territory for one year, is a person who is in Arizona to reside
permanently with no idea of having or seeking a permanent home
elsewhere.

3. DIVORCE—JURISDICTION—DOMICILE OF PARTIES—HUSBAND AND WIFE.
While, as a rule, the domicile of a wife is that of her husband, yet
where she is forced to leave him for any cause sufficient as ground
for divorce, she may establish a separate domicile for herself.

4. DIVORCE—JURISDICTION—RESIDENCE—"ACTUAL BONA FIDE RESIDENT."
Mere quarrels between spouses in which both were partly at fault,
and after which they continued to reside under the same roof, there
being no physical violence nor any serious mental distress, were
not such cruelty as justified the wife in abandoning her home
in Texas and establishing a separate domicile in Arizona, so that
she did not, by remaining in Arizona more than one year, acquire
an "actual *bona fide* residence," within the meaning of Revised
Statutes of 1901, paragraph 3114, making a year's residence a con-
dition to the maintenance of an action for divorce.

5. DIVORCE—GROUNDS.—Sporadic  quarrels  or  disagreement  between
spouses, in which both are equally guilty, are not grounds for
divorce.

WRIT OF ERROR from the District Court of the Second
Judicial District, in and for the County of Cochise.  Fletcher
M. Doan, Judge.  Reversed.

The facts are stated in the opinion.

Messrs. Pickett & Pickett and Messrs. Morrow & Morrow,
for Plaintiff in Error.

Mr. O. Gibson, for Defendant in Error.

ROSS, J.—This is an action for divorce based on the
grounds of desertion and failure to provide.  The plaintiff
and defendant were intermarried in the state of Georgia in
1868.  They subsequently moved to Colorado, Texas, where
they lived together for thirty-one years and until December 9,
1909.  There were born to them three boys and three girls.
The girls are dead, but the boys are living, two of them in
Arizona and one in Texas.  Prior to December 9th, one of
the boys who was in business in Cochise county, Arizona, wrote
to an invalid brother, then in Colorado, Texas, asking him to

come to Arizona and assist him in his business, and the in-
valid brother left Colorado, Texas, on December 9, 1909, for
Arizona. His mother, the plaintiff, came with him. She
and her invalid son arrived in Cochise county, Arizona, De-
cember 11, 1909. The invalid son needed the care and atten-
tion of his mother, and, as she testified, she came to Arizona
to "keep house for him." Later in her testimony, in answer
to a question as to her intention in coming to Arizona, she
said: "I came with the intention of remaining, of making
some portion of Arizona my home; but I did not know what
portion."

The plaintiff and defendant owned a home in Colorado,
Texas, of six or seven rooms, comfortably furnished, and with
all necessary outhouses and fences, and were occupying it
together with one of their sons and his wife on December 9,
1909, and had occupied it for some time prior thereto. The
plaintiff left their home for Arizona without any complaint
against her husband or declaration of intention to reside per-
manently in Arizona; but, on the contrary, her husband ac-
companied her to the depot, and their parting was one of
good feeling, at least to all outward appearances. From that
time on a desultory correspondence was carried on between
them, largely concerning their property rights; but no men-
tion was made by plaintiff of her intention to abandon the
defendant or to permanently locate in Arizona, until Decem-
ber, 1910, or shortly before that date, when she wrote to de-
fendant of her suit for divorce. The defendant resided at
their home in Texas during this time. Under date of August
24, 1910, he wrote the plaintiff asking her to come home and
bring their invalid son, suggesting that plaintiff and their
son could be much more pleasantly and comfortably situated
in Colorado than in Tombstone.

The evidence shows that the defendant, conformable to
his station in life, supplied the ordinary comforts and neces-
sary food and clothing for his home and its inmates during
all the years up to December 9, 1909, and the plaintiff stated
that the defendant "took care of her reasonably well." The
defendant is a man of good habits. The plaintiff said her
husband was abusive in his language to her a couple of times,
and in these family quarrels she "would give it back to him,"
but not as "heavy as he did." For about one year prior to

plaintiff's coming to Arizona the plaintiff and defendant, although living under the same roof and in their residence, by mutual consent, had not cohabited as husband and wife.

The lower court, among other things, found the facts to be: "(2) The court finds: That plaintiff came to Arizona December 11th, 1909, with the *bona fide* intention of making Arizona her permanent home. That pursuant to such intention she actually took up her residence on that date in Cochise county, Arizona, and ever since said date to the hearing of this suit she has continuously so resided in Cochise county and made her home with her invalid son, and kept house for him, and is now residing in this county. That for more than one year prior to plaintiff's coming to Arizona, plaintiff and defendant had not cohabited as husband and wife, but were living separate and apart, although they occupied the same residence. They had frequent quarrels and difficulties over money and property matters. . . . (3) The court finds that the allegations in plaintiff's complaint of abandonment of plaintiff by the defendant have not been sustained by the evidence." Then follows the judgment of the court dissolving the bonds of matrimony between the plaintiff and defendant.

While many errors are assigned by the plaintiff in error, but one will be considered by us. It is: "The court erred in entertaining jurisdiction of the subject matter of the suit, because the plaintiff was not a *bona fide* resident of Arizona at the time this suit was filed, but having without just cause deserted her husband, whose domicile was in Texas, her domicile was in the state of Texas."

Paragraph 3114 of the Revised Statutes of Arizona of 1901, provides: "No suit for divorce from the bonds of matrimony shall be maintained in the courts unless the plaintiff shall, at the time of filing his or her complaint, have been an actual *bona fide* resident of the territory for one year and shall have resided in the county where the suit is filed six months next preceding the filing of the suit." The question as to whether the plaintiff had acquired at the time of filing her suit the requisite and sufficient residence under our laws to entitle her to maintain her action is squarely before us for our decision. Ordinarily an appellate court will not disturb, but will adopt, the findings of the trial court where there is a conflict in the evidence. The rule is otherwise where there

is a substantial failure of the evidence to support the findings. *Miller* v. *Miller,* 7 Ariz. 316, 64 Pac. 415.

In this case there is no material dispute as to the facts in evidence bearing upon the question of the residence of plaintiff, and it is the legal effect of those facts and circumstances that we are to ascertain. The expression "actual *bona fide*" resident, as used in paragraph 3114, *supra,* is very much the same language as that used in the statutes of other states concerning divorce, and we are therefore not without a construction of the expression by the highest courts of such states. In *Hamill* v. *Talbot,* 81 Mo. App. 215, the court said: "The statutory terms 'resident or residence,' as used in divorce statutes, contemplate, we think, an actual residence with substantially the same attributes as are intended when the term 'domicile' is used. They do not mean the place where the defendant in fact resides for the time being. They mean a residence of a permanent and fixed character, a domicile"; citing Bishop on Marriage and Divorce, sec. 109; *Pate* v. *Pate,* 6 Mo. App. 49, and a number of cases from other states.

In *Hendricks* v. *Hendricks,* 72 Ala. 132, 133, the court said: "The statute, in express terms, prohibits the filing of a bill for divorce upon the ground of voluntary abandonment, unless it is alleged and proved that, for three years next before the filing of the bill, the complainant has been *bona fide* a resident of this state. Code of 1876, sec. 2691. The obvious purpose of the statute is the prohibition of divorces by the jurisdiction having authority to decree them, to those who, it is possible, may have transiently and temporarily transferred their residence to this state, or who, after the abandonment has occurred, may have transferred their actual domicile from this to another state—the prevention of frauds upon the law, by a temporary residence raised for the purpose of giving jurisdiction to the court."

In *Whitcomb* v. *Whitcomb,* 46 Iowa, 437–443, the court said: The statute "providing for six months' residence in the state in order to give jurisdiction in divorce proceedings means, 'a legal residence, not an actual residing alone, but such a residence as that when a man leaves it temporarily, or on business, he has an intention of returning to, and which when he has returned becomes, and is, *de facto* and *de jure,*

his domicile, his residence. There must be a fixed habitation, with no intention of removing therefrom.' ''

The same rule of construction has been adopted by the supreme courts of Massachusetts and Oklahoma. *Hanson* v. *Hanson,* 111 Mass. 158; *Beach* v. *Beach,* 4 Okl. 359, 46 Pac. 514.

We conclude that ''an actual *bona fide* resident'' means a person who is in Arizona to reside permanently, and who, at least for the time being, entertains no idea of having or seeking a permanent home elsewhere.

The general rule may be stated to be that ''the law fixes the domicile of the wife by that of the husband and denies to her during cohabitation the power of acquiring a domicile of her own separate and apart from him.'' ''The later and better cases, however, have broken away from this rule where the wife has been abandoned or forced by brutal treatment (or, we add, for any cause sufficient in law as grounds for divorce) to leave the husband, when she is permitted to establish a domicile for herself.'' 14 Cyc. 846–848.

It remains for us to determine if, from the evidence, this case falls within the exceptions to the rule above stated. In this connection it may be noted that the trial court found that the allegations in plaintiff's complaint of abandonment of the plaintiff by defendant had not been sustained, and our examination of the evidence in the case satisfies us that this finding of the lower court is correct. The only evidence of ill-treatment of plaintiff by the defendant was the testimony of the plaintiff wherein she stated that she and her husband at different times had had quarrels with each other. She particularizes as to these quarrels and points out only two occasions, in one of which she states that her husband had driven her span of horses and upon his return home, because of the fatigued look and condition of the animals, she had upbraided her husband; that he resented the censure and then stated he would leave home; that he would not stand to be talked to in that way; that he did go away from home, but returned the following day and continued to live in their residence. Another time there was some trouble and passing of unpleasant words over some property rights. Notwithstanding these family troubles, the plaintiff and defendant continued to live

under the same roof and at their parting at Colorado, Texas, December 9, 1909, they were on friendly terms.

Cruelty of a kind sufficient to authorize the granting of a divorce has been variously defined by the courts; but nowhere, so far as we are advised, has an occasional and isolated disturbance of the family relations participated in by both of the spouses been considered sufficient to authorize the dissolution of the marital relation. There is no evidence of physical violence actually applied or threatened. Nor is there any evidence pretending to show any mental distress that is likely to destroy the life or health of the plaintiff. In *Beach* v. *Beach,* 4 Okl. 359, 389, 46 Pac. 514, 524, the court said: "With reference to acts of physical violence, the rule has always been that a reasonable apprehension of bodily hurt was sufficient; but where the conduct complained of operates primarily upon the mind, producing mental pain, it is not sufficient that there should be simply danger that such conduct, thus operating through the mental faculties, may produce injury to the physical system or bodily hurt, but it must be shown that such is in fact the effect, or, at least, that such effect may be reasonably apprehended as the result of the conduct."

Neither are sporadic quarrels or disagreements between the spouses in which both of the parties are equally guilty to be treated by the courts as constituting grounds for divorce. "The authorities are too numerous to require citation which hold that no single act operating mentally is sufficient to constitute cruelty justifying divorce, but that there must be a continuity of such conduct, and many, if not the great majority of, authorities, hold that such conduct must be shown to have been induced by malevolence, hatred, or spite." *Beach* v. *Beach,* 4 Okl. 390, 46 Pac. 524.

The conduct complained of by the plaintiff on the part of the defendant is not such excessive cruelty as would have entitled her to a divorce under the laws of the state of Texas. In *Scott* v. *Scott,* 61 Tex. 119, it is said by the court that the wife may have a divorce for words spoken by her husband which impeach her chastity, but that same court added: "In no other cases have mere words alone, unaccompanied by other acts of cruelty, been held sufficient excesses to justify a separation from the bonds of matrimony."

We conclude that the conduct complained of by the plaintiff was not such cruelty as would justify her in abandoning her home; and in contemplation of law her residence or domicile was fixed by that of her husband, and she did not acquire an actual *bona fide* residence in the territory of Arizona by reason of her presence therein during the year previous to the institution of her suit for divorce. The marriage relation being the question involved in an action of this kind, the only court vested with jurisdiction to hear and determine the matter was the court of their matrimonial home.

We therefore hold that the district court of Cochise county was without jurisdiction to try the case. The case is remanded to the superior court of Cochise county, with directions that the same be dismissed for want of jurisdiction.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

Application for rehearing denied.

---

NOTE.—The right of the wife to acquire separate domicile for the purposes of a divorce suit by her is considered in notes in 59 L. R. A. 146, and 38 L. R. A., N. S., 297.

Generally, as to the character of residence essential to give jurisdiction in divorce proceedings, see notes in 12 L. R. A., N. S., 1100; 28 L. R. A., N. S., 992.

As to *bona fide* residence as condition of eligibility for plaintiff in divorce, see notes in 9 Ann. Cas. 1200; 12 Ann. Cas. 1092.

As to meaning of term "place of abode," see note in Ann. Cas. 1912A, 78.

As to rights of wife to require separate domicile after abandonment of marriage relation, see note in Ann. Cas. 1912D, 897.