80 So.2d 541 (1955)
Pasquale DARVIE
v.
AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA.
No. 20538.
Court of Appeal of Louisiana, Orleans.
May 23, 1955.
Rehearing Denied June 15, 1955.
Writ of Certiorari Denied October 4, 1955.
*543 Herman M. Schroeder, New Orleans, for plaintiff-appellant.
Moise S. Steeg, Jr., and Louis G. Shushan, New Orleans, for defendant-appellee.
McBRIDE, Judge.
Pasquale Darvie, the plaintiff, brought this suit against the defendant, American Bankers Insurance Company of Florida, seeking to recover the sum of $1,547, of which $819 is claimed as being due plaintiff under a policy of collision insurance which had been issued by defendant and which covers plaintiff's automobile, $610 for the loss of use of the automobile, and $118 as the value of tools, equipment and personal belongings which were in the automobile and which defendant sold along with the wrecked automobile. Plaintiff also prays for a penalty of twelve per cent of the amount due him by defendant, plus attorney's fees of $300.
Defendant made answer and admitted that it carried a policy of insurance on plaintiff's automobile which included the risk of loss or damage by collision, but denied that the vehicle was totally demolished. Defendant admitted that plaintiff filed proof of loss and alleges that it did not deny liability under its policy but, on the contrary, attempted to pay plaintiff the sum of $275, the actual cash value of the automobile, which offer plaintiff would not accept.
The trial court rendered judgment in favor of plaintiff in the amount of $550, together with legal interest from date of judicial demand until paid. The plaintiff prosecuted a suspensive and devolutive appeal from the judgment, which appeal has been answered by the defendant which prays that the judgment be amended by reducing the amount thereof to $410, with legal interest on $135 from date of judicial demand.
The record reveals these undisputed facts: Plaintiff's 1947 model Pontiac automobile, the speedometer of which showed a registration of 51,301 miles, was involved in an accident on December 25, 1953; that the vehicle was damaged to such an extent that repairs thereto were economically unfeasible and the car was considered as having been totally destroyed; the adjuster for defendant insurance company sold the wrecked automobile for junk without consulting plaintiff and received $50 for it; that the automobile was insured to the extent of $819 (less the first $50) against the peril of collision and upset under a policy issued by defendant; that on December 30, 1953, plaintiff filed proof of loss with defendant in which he claimed $1,114.80, the cost of the car to him.
At the outset let us say that the plaintiff is not entitled to recover the $610 claimed for loss of use of the automobile for the simple reason that defendant's policy contract did not insure plaintiff against such loss; nor can plaintiff recover $118 for the tools, equipment and personal belongings which he claims were in the car when it was sold by the adjuster, for the reason that it was never proven what tools, equipment or personal belongings were in the car or what the value thereof was. All that the plaintiff is entitled to recover under the policy is the actual cash value of the automobile at the time of its damage or destruction regardless of the fact that plaintiff paid $1,114.80 for it and held defendant's policy for the face amount of $819. Under the provisions of the policy the extent of defendant's liability is the actual cash value of the vehicle at the time of the loss.
The plaintiff produced no testimonial proof going to show exactly what the cash value was on December 25, 1953, and the only evidence respecting the cash value of the automobile as of the date in *544 question emanated from several witnesses produced by the defendant. These witnesses in testifying referred to certain valuation books widely used by automobile dealers to facilitate in determining the value of secondhand automobiles. But, of course, these books are merely guides and are issued for the convenience of those engaged in such business and they are not binding on this court in the determination of the value of plaintiff's automobile. The trial judge was of the opinion that the cash value of the car prior to its demolition was $600, but there is no evidence which would support a finding that the automobile was worth that sum. It was shown by plaintiff that the automobile was in excellent condition and this is what prompted the trial court to fix plaintiff's loss at $600. The evidence as to the actual value of the automobile which impresses us most was given by Harry J. Bertram, a used car salesman, employed by an agency dealing in Pontiac automobiles. Bertram referred to the valuation books above alluded to and stated that one book carried the valuation of the car at $550 and that the other carried it as $335. The witness intimated that the higher of the two valuations most properly represents the true valuation of the car.
Plaintiff having produced no witnesses who could say what his car was worth, we are constrained to take the highest value fixed by the defense witnesses and the highest estimation came from Mr. Bertram. If we were to concur in the holding of the trial judge and say that the automoble was worth more than $550, we would have to indulge in the rankest kind of conjecture. So, therefore, the plaintiff is entitled to recover from the defendant on the policy the sum of $500 which we hold to be the actual cash value of the automobile less $50.
The most controverted question in the case is whether plaintiff is entitled to recover a penalty of twelve per cent of the difference between the amount tendered to him by defendant and the amount found to be due by the court, plus a reasonable attorney's fee for the prosecution and collection of plaintiff's claim. LSA-R.S. 22:658 provides:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 above shall pay the amount of any claim due any insured within sixty days after receipt of satisfactory proofs of loss from the insured or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twelve per cent damages on the total amount of the loss, payable to the insured, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made twelve per cent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be twenty-five per cent and all reasonable attorney's fees."
The only tender by defendant was made on March 1, 1954, when Schwartz, defendant's agent, sent a letter to plaintiff's attorney which contained therein a check for the sum of $225 offered in full settlement of plaintiff's claim. Plaintiff's attorney refused to accept the check and on March 3, 1954, returned it to defendant via registered mail. Defendant's contention is that the tender of the $225 was made within sixty days after the receipt of the proof of loss from plaintiff, while, on the other hand, the plaintiff takes the position that the tender was not made until the sixty-first day of the term and, therefore, came one day too late. We believe that the tender, though insufficient in amount, was timely made in view of the fact that February 28, 1954, the last day *545 of the sixty-day term, fell on a Sunday, a day of public rest, and this allowed defendant all of the following day, March 1, 1954, which was not a dies non, to make its tender to plaintiff. Meyer v. Bichow, 133 La. 975, 63 So. 487.
Defendant claims that it was in good faith throughout the sixty-day period allowed by law for adjustment of insurance losses and takes the position that its actions were not arbitrary, capricious and without probable cause and that it should not be subjected to the penalties provided for by LSA-R.S. 22:658. Defendant's pleas of good faith do not strike us favorably. Plaintiff's claim was assigned to defendant's adjuster, Robert B. Miller, on January 6, 1954, and on that very day Miller examined the wrecked automobile and determined in his own mind that its actual cash value was $410. Miller testified that on January 18, 1954, he offered the sum of $410 "less $50 deductible" to plaintiff's attorney and that he again on February 5, 1954, reiterated the offer, but that on both occasions the attorney declined to accept the amount offered. Plaintiff's attorney denies vehemently that any offer at all was made to him by Miller or by anyone else. He stated that on January 18, the day on which Miller claims to have made the first offer, he was confined to Veterans Administration Hospital in New Orleans undergoing surgery.
There is one feature connected with defendant's plea of good faith that, frankly, we do not understand and that is why it was Miller offered plaintiff $410, less $50, on the two occasions in January and February and yet on March 1 Schwartz sent to plaintiff's attorney a check for only $225. If Miller entertained the belief that the cash value of the automobile at the time of its destruction was $410, there is no reason known to us why Schwartz should have ultimately tendered a lesser amount in full settlement of plaintiff's loss.
Defendant maintains that plaintiff was guilty of misrepresentation with reference to the value of the automobile, but this is not sustained by the evidence. It appears that plaintiff filed his proof of loss claiming $1,114.80, which was the amount of the cost of the automobile to him, and there is no question that this figure is far in excess of the amount of the insurance coverage and even greater than the face value of the policy. It also appears that when plaintiff filed suit against defendant, in addition to claiming the full face value of the policy he also sought to recover damages for the loss of the use of the automobile and to recover also the value of his tools, equipment and personal belongings which he claimed were sold by the adjuster along with the wrecked automobile. There is nothing in the record which could lead us to the conclusion that plaintiff was guilty of willful misrepresentation or false swearing. Perhaps, the plaintiff thought that he was insured under the policy to the extent of the amount which he had paid for his automobile. When the suit was filed, the attorney evidently was under the impression that plaintiff was entitled to recover from defendant the full face value of the policy, to wit: $819. We do not believe that either plaintiff or his attorney in bad faith attempted to inflate the amount of plaintiff's claim. But irrespective of all this, surely the defendant must have known the extent of the policy coverage, and merely because the plaintiff was in error in the amount in the proof of loss, this would afford no excuse for defendant's failure to adjust the loss and make settlement with plaintiff for the amount which was legally due to him. It seems strange that the defendant would have ordered the wrecked automobile sold for junk as it did if defendant did not believe that plaintiff was entitled to an adjustment and settlement under the policy. See Roach v. Harmonia Fire Ins. Co., 176 La. 356, 145 So. 769; Perot v. Carolina Ins. Co. of Wilmington, N. C., La.App., 171 So. 458.
The several cases mentioned in the reasons for judgment assigned by the trial judge as supporting his conclusion that the penalties provided for in the statute should not be assessed against defendant are not applicable. For instance, in Occhipinti v. Boston Ins. Co., La.App., 72 So.2d 326, *546 there was doubt on the part of the lower court, as well as in the mind of this court, as to whether the insured building was a total loss or if it could be rebuilt and, therefore, and for that reason, the insurer was held to be not arbitrary, capricious, or as having acted without probable cause in failing to make full payment for the insured's loss.
In the case of Isaac Bell, Inc., v. Security Insurance Company, 175 La. 599, 143 So. 705, 707, the Supreme Court, in commenting on the statute which is the source of LSA-R.S. 22:658, said:
"We think that section 3 of Act No. 168 of 1908 is mandatory and must be given effect in every case where the insurance company resists payment of the whole or any part of a loss covered by its policy, provided the insured judicially recovers more than the insurer admits to be due and timely tenders or pays to him."
See, also, Perot v. Carolina Ins. Co. of Wilmington, N. C., supra; Chambers v. North British & Mercantile Ins. Co., La. App., 175 So. 95; Dutton v. Harmonia Insurance Company of Buffalo, N. Y., 191 La. 72, 184 So. 546.
There was no probable cause for defendant's failure to make settlement with plaintiff and the statutory provisions being mandatory there must be assessed against defendant as a penalty twelve per cent of the difference between the amount which it tendered to plaintiff, $225, and the amount of $500, which is the amount we find due to plaintiff. This penalty amounts to $33.
Likewise plaintiff is entitled to a reasonable attorney's fee. In consideration of the amount of the claim and the fact that it was necessary for plaintiff's attorney to try the case in two courts and to prepare comprehensive pleadings and briefs, we feel that the sum of $125 would constitute a reasonable fee under the circumstances.
For the reasons assigned, the judgment appealed from is amended so as to provide that plaintiff have judgment against the defendant for the full sum of $500, together with legal interest from date of judicial demand until paid, and with a penalty of twelve per cent, or $33, plus an attorney's fee of $125, and as thus amended the judgment is affirmed. Defendant is to pay the costs of both courts.
Amended and affirmed.