548 P.2d 1179

**Robert J. STEPHAN, Jr., Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, an Illinois Corporation, Appellee.**

**No. I CA–CIV 2666.**

Court of Appeals of Arizona, Division 1, Department C.

April 20, 1976.

Rehearing Denied May 21, 1976.

Review Denied June 8, 1976.

**368**

Cox & Cox by Z. Simpson Cox, Phoenix, for appellant.

Robbins, Green, O'Grady & Abbuhl, P. A. by Robert H. Green and Victor W. Riches, Phoenix, for appellee.

## OPINION

HAIRE, Chief Judge, Division 1.

The only question presented on this appeal is whether the standard collision provisions of the automobile liability policy issued by defendant Allstate Insurance Company to plaintiff Stephan provided coverage for temporary loss of use of his automobile while it was being repaired at the insurer's expense.

The matter was decided in the trial court on motion for summary judgment, and the facts are not in dispute. The insured's (Stephan's) automobile was damaged in an accident to such an extent that it required repairs. He took it to a repair shop of his choice and Allstate paid for the repair work. He then rented a second vehicle for one week while his auto was being repaired, incurring rental expenses in the amount of $129.87. Allstate denied Stephan's claim for this rental expense, advising him that there was no coverage for such rental or loss of use under his policy. Stephan then filed his complaint, contending that the policy provided coverage for the loss of use of his automobile while undergoing repair.[1]

Before proceeding further, we point out that Stephan's claim did not purport to be a claim for *damages* based upon any alleged unreasonable or arbitrary delay by the insurer in performing its repair obligations under the policy. If such were the case, damages measured by loss of use would be proper, separate and apart from any ex-

---

1. Stephan's complaint was filed as a class action, and alleged other issues not involved in this appeal. Inasmuch as there was never a determination by the trial court as to whether the action could be maintained as a class action, the matter is here as an individual appeal and has no class action status.

press coverage provided in the policy. *Home Indemnity Company v. Bush,* 20 Ariz. App. 355, 513 P.2d 145 (1973). Rather, Stephan's claim was based solely on the contention that the policy itself provided *coverage* for such loss of use for the period during which he was deprived of the use of the automobile while being repaired. By entering summary judgment for Allstate, the trial judge rejected this coverage contention.

Stephan bases his claim for coverage upon the provisions of Section IV of the policy, entitled "Protection Against Loss to the Automobile". Looking under Section IV on the index page of the policy, we find only two references which might indicate coverage for loss of use of an automobile. The first, "Transportation Expense Paid" refers to page 13; the second, "Car Rental Paid if Car Stolen", refers to page 14. On page 13 we find this pertinent provision:

"2. Transportation Expenses:

Allstate will reimburse the named insured for the cost of transportation: (a) from the place of disablement of the automobile to the place of intended destination, but not to exceed $5 for each occurrence, provided the disablement involves a loss with respect to which this policy affords automobile collision or automobile comprehensive insurance;"

On page 14, we find:

"2. Transportation Expenses:

Allstate will reimburse the named insured for the cost of transportation:

\* \* \* \* \* \*

"(b) if there be a theft of the entire automobile, not to exceed $8 per day nor a total of more than $200, incurred during the period starting 48 hours after the report of the theft to Allstate and ending when Allstate offers settlement for the theft, and if automobile comprehensive insurance is afforded by this policy."

Although Stephan purchased both collision and comprehensive (theft) coverage so as to entitle him to the coverage benefits of both of the foregoing provisions, he does not base his claim on either of these express benefits. Rather he claims that coverage is afforded under the general provisions of Coverage D:

"Automobile Collision Insurance"

"When collision damages your car

"Allstate will pay for loss to the owned automobile or non-owned automobile, caused by collision, less the deductible amount stated on the Supplement Page, but the deductible amount shall not be deducted with respect to a collision involving the owned automobile and another automobile insured by Allstate."

Stephan's claim is based upon the language ". . . for loss to the automobile . . . caused by collision. . . ."

Section IV of the policy contains provisions relating to both collision and comprehensive (theft) coverage. The term "loss" as used in Section IV is defined as follows:

" 'loss' means direct and accidental loss of or damage to (a) the automobile, including its equipment, or (b) other insured property."

It should further be noted that Allstate's liability under Section IV D (Collision Coverage Provisions) is clearly limited by the precise wording of the policy itself as follows:

"The limit of Allstate's liability is the actual cash value of the property, *or if the loss is of a part its actual cash value at the time of loss, but not to exceed what it would then cost to repair or replace the property or part with other of like kind and quality;* provided, however, the limit of liability for loss to any trailer is $500." (Emphasis added).

Notwithstanding the clear language of the collision provision and the limitation of liability provisions, Stephan contends that the use of the words "loss of" in the definition section could be interpreted to include the "loss of use" of his automobile while undergoing repairs, and thus an ambiguity is created which should be construed in his favor. We disagree.

■ We recognize that ambiguous provisions in insurance policies must be construed against the insurer. However, this principle becomes applicable only when, after considering all the provisions of the policy, it is not possible for the Court to ascertain the meaning of the language used when applied to the facts before the Court. *Maryland Casualty Company v. Clements,* 15 Ariz.App. 216, 487 P.2d 437 (1971); *Home Indemnity Company v. Wilson,* 107 Ariz. 434, 489 P.2d 244 (1971); *D. M. A. F. B. Federal Credit Union v. Employers Mutual Liability Insurance Co. of Wisconsin,* 96 Ariz. 399, 396 P.2d 20 (1964). Here, when all of the provisions of the policy are considered, there is no ambiguity. The collision provisions are clearly limited, with an express provision detailing and limiting the one situation of Allstate's liability for transportation expenses in case of a collision. This provision allows transportation expenses "from the place of disablement of the automobile to the place of intended destination, but not to exceed $5 for each occurrence. . . ." The limit of liability applicable to collision coverage is clear— ". . . not to exceed what it would then cost to repair or replace the property or part with other of like kind and quality." Also, we have previously mentioned the index page listing "Car Rental Paid *if Car Stolen*" (emphasis added). We further note that on page 13 of the policy directly below the collision coverage paragraph, there are a series of pictures dealing with coverage. One of these depicts two gentlemen approaching a "Car Rentals" establishment. In order to avoid any misconception, the possibility of an inference of loss of use coverage for a collision damaged vehicle is carefully excluded by the picture's caption:

"LOSS OF USE
(from Theft)"

■ When the provisions of a policy are plain and unambiguous upon its face, as in this case, those provisions must be applied as written, and as we stated in *Cagle v. Home Insurance Co.,* 14 Ariz.App. 360, 483 P.2d 592 (1971), the Court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning, or add something to the contract which the parties have not put there. In *Cagle,* in considering a liability limiting provision substantially identical to that here presented, we refused to expand a policy covering loss of a tractor and backhoe so as to cover "loss of use" of that equipment.

Cases from other jurisdictions cited by Stephan do not support his position, involving either the application of very express "loss of use" provisions, or the determination of loss of use as an item of damages for breach of other provisions of the policy, rather than as an item of contracted policy coverage. *See Lischin v. Nationwide Mutual Insurance Company,* 54 N.J. 132, 253 A.2d 803 (1969) (express loss of use policy coverage for theft); *American Standard County Mut. Ins. Co. v. Barbee,* 262 S.W.2d 122 (Tex.Civ.App.1953); (question of damages, not of coverage). *Calvert Fire Ins. Co. v. Osborne,* 267 S.W.2d 727 (Ky.1954) (question of damages, not of coverage); *Appleman on Insurance,* § 3885, p. 383 (citations involve express loss of use provisions). We have not been cited to, nor has our research disclosed, any authorities which would support Stephan's claim. On the other hand the following decisions, either by holding or reasoning, are contrary to his position. *Bickel v. Nationwide Mutual Insurance Co.,* 206 Va. 419, 143 S.E.2d 903 (1965); *Nelson v. Employers Mutual Insurance Co.,* La.App., 244 So.2d 659 (1971); *Darvie v. American Bankers Insurance Co.,* 80 So.2d 541 (La.Ct.App.1955); *Coleman v. American Bankers Insurance Co. of Fla.,* 228 So.2d 410 (Fla.Dist.Ct.App. 1969); *Jarvis Towing & Transportation Corp. v. Aetna Ins. Co.,* 72 N.Y.S.2d 696 (N.Y.Sup.Ct.1947); *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 519 P.2d 667 (1974).

■ In a further attempt to raise an ambiguity, Stephan places reliance upon an advertising brochure attached to plaintiff's complaint as Exhibit B. In the parties' pre-trial statement it was stipulated that

Exhibit B was "a copy of a brochure describing defendant's Crusader policy coverages and used by defendant to promote the sale of its automobile insurance."[2] Before considering any statements contained in the brochure, it is obvious, and Stephan's does not contend, that he placed any reliance on, or was in any way misled, by the brochure provisions. Stephan's contention in this regard is that somehow the brochure indicates that Allstate itself has interpreted its policy collision provision to include coverage for loss of use or cost of a rental replacement while the vehicle is being repaired. Even if we assume that the brochure would be admissible despite the unambiguous language of the parties' contract, a review of its language provides no support for Stephan's contention. The brochure language upon which Stephan bases his contention reads as follows:

"Collision insurance is really protection for your bank account. If your car is damaged in a collision and it would cut a big chunk out of your savings to get it repaired or replaced—then you need collision insurance.

"You can't count on the 'other guy' to pay. It could take months before the court decides the accident is his fault. Meanwhile, you'll have to pay for your repairs, go without a car or beg, borrow or rent one."

This language, read in its context, is a far cry from a showing that Allstate itself interpreted the collision coverage to include cost of a rental replacement in the brochure. It would require considerable straining on our part to twist this language into the meaning urged by Stephan.

In summary, considering all pertinent provisions of the policy, we find no ambiguity. It simply does not provide cov-

erage for loss of use while an insured automobile is being repaired for collision damage.

The judgment is affirmed.

NELSON, P. J., and EUBANK, J., concur.

---

2. As previously indicated, the matter was decided by summary judgment. Through the pre-trial statement Stephan offered the brochure in evidence, and Allstate objected on the grounds of immateriality. Bearing in mind that this matter was disposed of on cross-motions for summary judgment, we have assumed for the purposes of this opinion that the brochure was considered by the trial judge, even though he made no express ruling in that regard.