741 P.2d 307

**FARMERS INSURANCE COMPANY OF ARIZONA, Plaintiff-Appellant,**

v.

**Cecil F. OLIVER and Lydia A. Oliver, husband and wife; James T. Oliver and Patricia Harrington, as surviving parents of Toby Oliver, deceased, Defendants-Cross Defendants-Appellees.**

**No. 1 CA–CIV 8989.**

Court of Appeals of Arizona, Division 1, Department B.

May 7, 1987.

Holloway & Thomas, P.C. by Paul W. Holloway and Nicholas E. Vakula, Phoenix, for plaintiff-appellant.

Cecil F. Oliver and Lydia A. Oliver, in pro. per.

Neal S. Sundeen, Phoenix, for defendant-appellee James T. Oliver.

Hofmann, Salcito, Stevens & Myers by Noel K. Dessaint, Phoenix, for defendant crossclaimant-appellee Harrington.

GREER, Judge.

In this appeal Farmers Insurance Company of Arizona challenges the trial court's holding that Cecil and Lydia Olivers' three-year-old grandson Toby, who was staying with them at the time he drowned in their swimming pool, was not a "resident of the household" within the meaning of a coverage exclusion in the Olivers' homeowner's insurance policy. Farmers urges these issues for our consideration: (1) whether the trial court erred in holding that the term "resident of the household" was ambiguous in the context of the facts of this case, and (2) whether Toby was a resident of the Olivers' household because he lived under their roof as a family member for a substantial time in a close, intimate and informal relationship with no specific plans to leave. Our jurisdiction is founded on A.R.S. §§ 12–120.21 and 12–2101(B).

There is no dispute about the essential facts. Appellee James T. Oliver is the son of appellees Cecil and Lydia Oliver (the Olivers). James T. Oliver and appellee Patricia Harrington were the parents of Toby Oliver, who was born on December 3, 1981. Patricia and James were divorced on August 23, 1984, and James was awarded legal custody of Toby.

Around July 1, 1984, during the pendency of the divorce proceedings, James moved into an apartment at 219 North Colorado in Chandler, Arizona. On July 9,

1984 James was injured in a motorcycle accident and was hospitalized for three weeks. Patricia was unable to take care of Toby while James was in the hospital, and therefore left him with the Olivers.

When James was released from the hospital he initially stayed at the Olivers' home to recuperate. In September 1984 James moved back into his apartment in Chandler. James could not care for Toby due to his injuries. He also lacked sufficient space in his apartment to accommodate Toby, and was not yet employed. Toby accordingly remained with the Olivers.

James became employed in November of 1984. Around that time James told the Olivers that when he had saved enough to rent a larger apartment he would be taking Toby back. James never set a specific date when this would happen, but his mother's understanding was that it would be "soon." In his deposition James testified:

Q. My recollection is that both of your parents previously testified that there was some discussion amongst the three of you that Toby's living at their home was temporary and that the goal was for Toby to come live with you as soon as you had adequate quarters for him. Is that your recollection, also?

A. Yes. We discussed it—I discussed it with my mother. She was telling me that they were going to be leaving soon to go on vacation; that I needed to hurry up and get things done. And that was approximately a month before [Toby] died.

Q. During the period when you returned to work in November of '84 up until the time of Toby's death in February, I take it you were attempting to save what money you could to get a larger apartment so that Toby could live with you; is that right?

A. Yes.

Q. It was never your intent, was it, to leave Toby permanently at your mother and father's house; was it?

A. No.

The arrangement between James and the Olivers was that the Olivers were simply watching Toby for James until he could recover from his injuries and get back on his feet financially so that he could take care of Toby.

While Toby lived at the Olivers' home, they fed him, clothed him and on one occasion took him to a doctor to be treated for a rash on his face. Toby's clothes, toys and other belongings were primarily kept at his grandparents' home, though James kept some of Toby's clothes and toys at his own apartment. James contributed nothing toward Toby's support, initially because he was not working, and later because his father told him he did not want anything. James periodically took Toby out, visited with him and would have him stay overnight at his apartment on various weekends. Patricia would also take Toby overnight every other weekend.

Shortly before February 26, 1985, James rented a larger apartment in Tempe. His intention was to have Toby come live with him after he had furnished it. He did not move into the new apartment right away, and instead planned to stay with his sister for several weeks until he could buy furniture.

On February 26, 1985 Toby drowned in the swimming pool at the Olivers' home. He was three years old at that time.

At the time of Toby's death the Olivers were insured under a homeowner's policy issued by Farmers. The policy provided in pertinent part:

## DEFINITIONS

\* \* \* \* \* \*

3. *Bodily injury* means bodily harm, sickness or disease, including care, loss of services and resulting death.

\* \* \* \* \* \*

5. *Insured* means you and the following persons if permanent residents of your household:

a. your relatives

b. anyone under the age of 21.

\* \* \* \* \* \*

6. *Insured location* means:

a. The *residence premises*.

\* \* \* \* \* \*

SECTION II—LIABILITY

\* \* \* \* \* \*

Coverage E—Personal Liability

We shall pay all damages from an *accident* which an *insured* is legally liable to pay because of *bodily injury* or *property damage* covered by this policy.

\* \* \* \* \* \*

Exclusions

Applying to Coverage E—Personal Liability

We do *not* cover:

\* \* \* \* \* \*

5. *Bodily injury* to any resident of the household except a *residence employee*.

(Emphasis in original).

On June 13, 1985 Farmers filed this action seeking a declaration that the homeowner's policy afforded the Olivers no liability coverage for Toby's death. Joined as defendants were Cecil, Lydia and James Oliver and Patricia Harrington. James Oliver and Harrington each cross-claimed against Cecil and Lydia Oliver, alleging that they negligently caused Toby's death. Harrington, James Oliver and Farmers thereafter filed cross motions for summary judgment on the coverage issues. After argument, the trial court denied Farmers' motion for summary judgment and granted summary judgment in favor of Harrington and James Oliver. In its minute entry the trial court stated:

All parties present agree that there are no factual disputes in this case and that as a matter of law, the Court should enter orders. The Court finds that the minor child of cross claimant Patricia Harrington and J.T. Oliver was three years old at time of death and that his legal custody had been given to cross claimant J.T. Oliver who intended to establish a home for the minor child but was temporily [sic] unable to do so; that the words "resident of household" in exclusion provision of the policy is ambiguous in the context of facts of this case; and that at the time of death, the child was living with Cecil F. and Lydia Oliver. . . .

The court entered an amended judgment to that effect, which included attorney's fees awards in favor of James T. Oliver and Patricia Harrington and an appropriate finding pursuant to Rule 54(b), Arizona Rules of Civil Procedure. Farmers timely commenced this appeal.

Farmers now urges that the trial court erred in holding the term "resident of the household" ambiguous. Farmers also argues that the trial court should have held under the facts of the case that Toby was a resident of the Olivers' household in the ordinary sense of those words. In response, appellees argue that the term "resident of the household" is ambiguous as used in the policy and as compared with other policy language, and therefore contend the trial court properly construed it against Farmers. Appellees also contend that under the particular facts of this case Toby was as a matter of law not a resident of the Olivers' household, and further argue that under Arizona case law, Toby's residence legally followed that of appellee James T. Oliver, his custodial parent.

We agree with Farmers that the trial court incorrectly based its holding on the asserted ambiguity of the phrase "resident of the household" as applied to the particular facts. In *Stephan v. Allstate Ins. Co.*, 26 Ariz.App. 367, 548 P.2d 1179, 80 A.L.R.3d 1173 (1976), we noted that the rule under which ambiguities in insurance policies are construed against the insurer becomes applicable only when, after considering all the provisions of the policy, it is not possible for the court to ascertain the meaning of the language used when applied to the facts before the court. Both this court and our supreme court have previously found phrases similar to the one at issue here to be unambiguous. *Mid-Century Ins. Co. v. Duzykowski*, 131 Ariz. 428, 430, 641 P.2d 1272, 1274 (1982) ("resident of the same household"); *Heard v. Farmers Ins. Exchange Co.*, 17 Ariz.App. 193, 197, 496 P.2d 619, 623 (1972), ("any resident of the same household"). As the court stated in *Mid-Century Ins. Co.*:

Under Arizona law ... 'resident of the same household' on its face is not ambig-

uous, and this term must be interpreted according to its ordinary meaning. *Heard v. Farmers Insurance Exchange Co.*, 17 Ariz.App. 193, 496 P.2d 619 (1972).... [T]he ultimate question for resolution still remains a *factual* determination....

131 Ariz. 428, 430, 641 P.2d 1272, 1274. As we discuss in more detail below, this is not a case in which we find it impossible to ascertain the meaning of "resident of the household" as applied to the undisputed facts in the record.[1]

■ Although we reject the particular mode of analysis the trial court relied on here, we nevertheless reach the same result. In *State Farm Mut. Auto Ins. Co. v. Johnson*, 151 Ariz. 591, 593, 729 P.2d 945, 947 (App.1986), in resolving an issue broadly analogous to the one before us here, we quoted and relied on the leading case of *Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis.2d 27, 197 N.W.2d 783 (1972). There the Wisconsin Supreme Court held that the question of whether a person is a resident or member of a household depends on the following three factors, no one of which is controlling, but all of which must combine to a greater or lesser degree:

(1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship "... in contracting about such matters as insurance or in their conduct in reliance thereon." *National Farmers Union Property & Casualty Co. v. Maca*, [26 Wis.2d 399], 406, 132 N.W.2d 517, 521 [1965].

55 Wis.2d at 37, 197 N.W.2d 788–89. In *Mid-Century Ins. Co. v. Duzykowski*, our supreme court additionally stated:

Factors to consider in determining whether an individual is a "resident of the same household" include, but are not limited to, the individual's presence in, or absence from, the named insured's home on the date of the occurrence; the reasons or circumstances related to the absence or presence; the relationship of the individual to the named insured; living arrangements of the individual in earlier time periods; the individual's subjective or declared intent with respect to the place of residence; the existence of a second place of lodging. 93 A.L.R.3d 420 (1979); *United Services Automobile Association v. Mione* [34 Colo.App. 448, 528 P.2d 420 (1974)].

131 Ariz. at 430, 641 P.2d at 1274. Where the person whose residency is in question is a minor, generally the intention which is material is that of the person or entity with legal custody. *See Country Mut. Ins. Co. v. Watson*, 1 Ill.App.3d 667, 274 N.E.2d 136 (1971). *See generally, St. Joseph's Hosp. v. Maricopa County*, 142 Ariz. 94, 688 P.2d 986 (1984).

■ In this case Toby was living under the Olivers' roof, presumably in a close, intimate and informal relationship with them, and had done so for approximately seven months before his death. It was undisputed, however, that as of the date of Toby's death neither his custodial parent nor the Olivers themselves viewed the Olivers' home as Toby's permanent place of residence. All clearly agreed and intended that Toby's stay with his grandparents was only temporary, and was to continue only as it long as it took James to recuperate from his injuries, become employed, and move into a larger apartment in which

---

1. We are also mindful of our supreme court's recent statement:

[A] finding of ambiguity is the easy way out since it permits the court to create its own version of the contract and to find, or fail to find, ambiguity in order to justify an almost predetermined result. This is an approach which we have abandoned. *See Darner Motor Sales v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). We be-

lieve the proper methodology is to determine the meaning of the clause—where it is susceptible to different constructions—by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole.

*Transamerica Ins. Group v. Meere*, 143 Ariz. 351, 355, 694 P.2d 181, 185 (1984). *See also, The Arizona Prop. and Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 735 P.2d 451 (1987).

Toby could live with him. The record is clear that James allowed Toby to stay with his grandparents not because he believed Toby would be better off permanently in their care, or because he did not want Toby himself, but rather because adverse circumstances had rendered him temporarily unable to accommodate and care for Toby in a home of his own. Indeed, it is undisputed that James had rented a larger apartment and was preparing to furnish it when Toby died.

Since the facts are not in dispute, the question before us is one of law. Appellant urges us to conclude that Toby was a resident of his grandfather's house. Based on the facts presented to us, we are unable to reach that conclusion.

The authorities on which Farmers relies do not persuade us to a contrary result. *Fruchtman v. State Farm Mut. Auto Ins. Co.*, 274 Minn. 54, 142 N.W.2d 299 (1966) held that an adult emancipated son who had not lived at home for several years but was visiting his parents while in the military was not a member of their household even though he continued to use the family home as his permanent mailing address. *Aji v. Allstate Ins. Co.*, 416 So.2d 1225 (Fla.App.1982) also concerned the residence status of an adult. *Dofflemyer v. Gilley*, 360 So.2d 909 (La.App.1978) reversed summary judgment in favor of the liability insurer on the ground that a factual dispute about where the minor in question actually lived required a trial. *Rosenberger v. American Family Mut. Ins. Co.*, 309 N.W.2d 305 (Minn.1981) turned in part on a statutory definition of the term "resident," and drew four separate dissents. *Firemen's Ins. Co. of Newark, N.J. v. Viktora*, 318 N.W.2d 704 (Minn.1982) based itself on *Rosenberger*, and drew two dissents. Both *Rosenberger* and *Firemen's Ins. Co.* concerned the residency status of "children" who were either adults or nearly so.

■ Appellees also contend that Toby, as a matter of law, cannot have a "residence" separate and apart from his custodial parents, relying on such cases as *St. Joseph's Hosp. v. Maricopa County*, which stated:

[W]e have generally treated the statutory usage of the term "residence" as carrying the same connotation as the term "domicile." [Citations omitted.] In *Sneed [v. Sneed,* 14 Ariz. 17, 123 P. 312 (1912)] the court concluded

that an "actual bona fide resident" means a person who is in Arizona to reside permanently, and who, at least for the time being, entertains no idea of having or seeking a permanent home elsewhere.

*Sneed v. Sneed,* 14 Ariz. at 22, 123 P. at 314. Residence, then, like "[d]omicile is primarily a state of mind combined with actual physical presence in the state" or county. *Arizona Board of Regents v. Harper,* 108 Ariz. [223] at 228, 495 P.2d [453] at 458 [1972]. It "involves basically subjective material." *Id.* at 229, 495 P.2d at 459.

\* \* \* \* \* \*

A minor takes the domicile of his parents or legal guardian. *McNeal v. Mahoney,* 117 Ariz. 543, 545, 574 P.2d 31, 33 (1977). The rationale for this is apparently "the recognition that juveniles, *unlike adults,* are always in some form of custody. *Schall v. Martin,* [467] U.S. [253], [265], 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207 (1984) (emphasis supplied). *See also Matter of Appeals [sic] in Pima County Juvenile Action No. S–903,* 130 Ariz. 202, 635 P.2d 187 (App.1981).

142 Ariz. at 99, 688 P.2d at 991. However, in our view the residency of a custodial parent, while a factor to be considered by the trier of fact in deciding a minor's residency under the terms of this policy, is not absolutely controlling. We find that one's *actual* residency and not *legal* residency is what is contemplated by the term "resident" in this insurance policy exclusion, and therefore reject an absolute finding of a child's residency based solely on the residency of the custodial parent. As we previously indicated, under the facts of this case, the trial judge properly concluded that Toby was not a resident of his grandparents' household at the time of his tragic accident.

Appellee Patricia Harrington has requested an award of attorney's fees on appeal pursuant to A.R.S. § 12–341.01(A). We grant the request. She may establish the amount of the award by complying with Rule 21(c), Arizona Rules of Civil Appellate Procedure, and our decision in *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

Affirmed.

JACOBSON, P.J., and HAIRE, J., concur.