573 P.2d 80

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant/Cross-Appellee,**

v.

**Fernando Salvador GRANILLO, Jr., a single man, Fernando Salazar Granillo and Betty Granillo, his wife, Appellees,**

**and**

**Johnny Jim Ramirez and Mary Jean Ramirez, Individually and as natural parents of Robert Ramirez and Patrick Ramirez, minors, Appellees/Cross-Appellants.**

**No. 2 CA-CIV 2484.**

Court of Appeals of Arizona, Division 2.

Nov. 4, 1977.

Rehearing Denied Nov. 30, 1977.

Review Denied Dec. 20, 1977.

---

Pain & Julian, P. C. by Warren S. McCord, Phoenix, for appellant and cross-appellee.

Miller, Pitt & Feldman, P. C. by Janice A. Wezelman and Stanley G. Feldman, Tucson, for appellees and cross-appellants Ramirez.

James A. Quisenberry, Casa Grande, for appellees Granillo.

## OPINION

HATHAWAY, Judge.

Nationwide Mutual Insurance Company (hereinafter referred to as Nationwide) seeks review of the denial of its motions for summary judgment and for new trial. Nationwide filed a complaint for declaratory relief against defendants-appellees Ramirez and Granillo to establish that a motor vehicle liability policy of insurance issued by it to Fernando S. Granillo did not cover his son, Fernando, Jr. for an accident which occurred on August 16, 1975, in which Fernando, Jr.'s sister, Mary Jean Ramirez, sustained personal injuries. Nationwide also sought to establish that it had no duty to defend Fernando, Jr. in a pending tort action arising out of the car accident brought against him by Mary Jean Ramirez. Nationwide is now defending that suit under a reservation of rights as to coverage. Defendants' cross-motion for summary judgment on the coverage issue was granted.

Coverage for Fernando, Jr. is only available, if at all, under Part "VI. Use of Other Land Motor Vehicles," of Nationwide's policy since the vehicle in question was not owned by his father. Part VI(3) provides that bodily injury liability coverage ". . . shall extend to any other land motor vehicle . . . while used by [the named insured] . . . or by his spouse and the relatives of either if a resident of the same household. Those entitled to protection under this extension of coverage . . . are (a) the Policyholder, (b) any relative resident of the same household . . . Provided . . . such other land motor vehicle: (i) is not owned by such Policyholder or any member of the same household . . ."

It is undisputed that Fernando, Jr. was a resident of his father's household at the time of the accident. Thus, he falls within VI(3) and is covered by this policy unless the exclusionary provision of (i) is applicable.

The court in granting summary judgment for defendants found ". . . as a matter of law defendant Mary Jean Ramirez was not a 'member of the household' of plaintiff's named insured, Fernando Granillo, Sr., at the time of the accident within the meaning of that phrase as used in the exclusionary provision in plaintiff's policy of insurance . . ." We find no error.

■ When the pleadings, depositions, and admissions on file, together with the affidavits and exhibits show that there is no genuine issue as to any material fact involved in the issues formed by the pleadings, the trial court may grant summary judgment. Rule 56, Arizona Rules of Civil Procedure, 16 A.R.S.; *Coombs v. Lumbermen's Mutual Casualty Company*, 23 Ariz. App. 207, 531 P.2d 1145 (1975). In reviewing a summary judgment, this court must view the evidence in a light most favorable to appellant and give it the benefit of all inferences reasonably drawn therefrom. *Taylor v. Mueller*, 24 Ariz.App. 403, 539 P.2d 517 (1975). The facts, from the depositions and the exhibits, viewed in a light most favorable to appellant, are as follows.

Mary Jean was born in 1955 and married Johnny Jim Ramirez on June 10, 1973, in Florence, Arizona. Shortly after their marriage, Johnny joined the army and was sent to Georgia for two or three months. During this time, Mary Jean lived part of the time with him in Georgia, part of the time with her parents in Florence, and part of the time with her grandparents in Florence.

In September, 1974, the Ramirezes moved into army-provided housing in Yuma. Sometime prior to July 1975, Johnny received notice that he was to be transferred to Korea in November 1975. In mid or late July, Mary Jean and her two children left Yuma in a car owned by her and her husband. They traveled to Florence, bringing clothes but no personal belongings. Mary Jean's intent was to look for a job, find a house, and rent it as soon as she could afford to do so. She wanted to be settled in Florence before her husband left for Korea. She did not intend, once she found a job, to move back to her home in Yuma.

Mary Jean was in Florence for about a month before the accident occurred. She stayed with her parents and with her grandparents. While at her parents' home, she shared a room with her oldest child and with her sister. Mary Jean's baby slept with Mrs. Betty Granillo, Mary Jean's mother. Mary Jean did not discuss with her parents how long she could stay there. She paid no rent to her parents, sometimes ate meals with them, occasionally bought groceries to be shared by all, and helped with the housework.

After about a week in Florence, Mary Jean found a job in Coolidge, Arizona. In applying for that job, she submitted an application on which she listed her parents' names in response to question. "Name of Parent or Guardian with whom you live." She received mail at her parents' home.

During the month she was in Florence, Mary Jean brought her children to her grandparents' home during the day, and their great-grandmother, Mrs. Mary Granillo, would take care of them. Mary Jean and her children also spent some nights, less than five, at this home.

On August 16, Mary Jean, her children and her brother, Fernando, Jr., were driving to Yuma to pick up her husband. He was to return to Florence with them and take the car back to Yuma. Mary Jean planned to ride from Florence to her job in Coolidge with co-workers. She asked Fernando, Jr. to accompany her "so I didn't have to go alone." She became tired and asked him to drive. He was driving when the accident occurred.

Fernando, Jr. testified that during the time Mary Jean was in Florence, he drove her car four times at her request. He ran errands for her, but never used the car to run errands for his parents or for his own pleasure. He did not need her car because he could use his parents' cars. He thought her car was unavailable to him, even when she was not using it. There is no suggestion that anyone, other than Fernando, Jr. used Mary Jean's car during this period.

The purpose of an exclusionary provision like the one in Nationwide's policy is to protect the insurer from a situation where an insured pays for one policy and is covered while driving other cars, under his control, available at will, and likely to be used often, whether owned by him or members of his family. *Lumbermens Mut. Casualty Co. v. Pulsifer, et al.,* 41 F.Supp. 249 (D.Me., S.D.1941). A car owned by one who is not a member of the household is not usually under the insured's control nor subject to his frequent use.

"Whether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof . . ." *Lumbermens Mut. Casualty Co. v. Pulsifer, supra,* at 251; *Heard v. Farmers Insurance Exchange Company,* 17 Ariz.App. 193, 496 P.2d 619 (1972).

Nationwide stresses that no specific time was stated for Mary Jean to leave her parents' home and that she could have stayed there as long as she liked. Living together under one roof as a family, however, is neither the sole nor the controlling

test in determining whether a person is a member of a household. If one ". . . *comes under the family roof for a definite short period or for an indefinite period under such circumstances that an early termination is highly probable*" then one is not a "member of the same household." *Pamperin v. Milwaukee Mutual Ins. Co.,* 55 Wis.2d 27, 197 N.W.2d 783 at 787 (1972). (Emphasis in original)

█ That phrase implies a more enduring relationship than was here manifested. If a relative lives in the home on a temporary basis she does not become a member of the household within the meaning of the exclusionary provision in Nationwide's policy. *Mission Insurance Company v. Ward, et al.,* 487 S.W.2d 449 (Mo.1972); *Giokaris v. Kincaid,* 331 S.W.2d 633 (Mo.1960).

The intended duration of the relationship is a fact to be considered. *Pamperin, supra.* "The intended duration should be . . . long enough so that it is reasonable to expect the parties to take the relationship into consideration in contracting about such matters as insurance or in their conduct in reliance thereon." *National Farmers Union Property & Casualty Co. v. Maca,* 26 Wis.2d 399, 132 N.W.2d 517 at 521 (1965).

█ Mary Jean's intent to reside in her parents' home only until she could afford to rent her own home is undisputed. On the date of the accident she had not yet received a paycheck. She came together temporarily with her parents while she was relocating her family to a different town.

She did not consider herself to be a member of the Granillo family. Her father considered her a guest in his home. Her mother testified, "She came down here to make preparations to work to get some money so they could rent a place before her husband left here because she cannot live with me."

Mary Jean's car was never available for the frequent use of the Granillo family. It is uncontroverted that on the day of the accident she was taking it back to Yuma to leave it with her husband, thus making it unavailable to anyone in Florence, including herself. These facts would not support an inference that the Granillos exercised control over Mary Jean's car or had a permanent connection with it. The exclusionary provision in Nationwide's policy is not applicable to this type of situation.

The fact that Mary Jean used the Granillo home as a mailing address is not decisive. "This is not necessarily an indication of an intention to return to the family circle, but often is merely a matter of convenience." *Fruchtman v. State Farm Mutual Automobile Insurance Company,* 274 Minn. 54, 142 N.W.2d 299 at 301 (Minn.1966).

Mary Jean brought neither furniture nor other personal possessions with her when she left Yuma. Marital discord did not prompt the move. She could not stay on the Yuma Army Base in her husband's absence. While in Florence, she did not even reside continuously with her parents.

The relatively brief period of occupancy preceding the accident and the temporary nature of the arrangement, when coupled with all the other circumstances attending the move from the Yuma Army Base to the Granillo house, militate against a finding that there was a merger of the two families, the Granillos and the Ramirezes, such as would make Mary Jean amenable to the exclusionary provision of the insurance policy. See *Napier v. Banks,* 19 Ohio App.2d 152, 250 N.E.2d 417 (1969).

Fernando, Sr. treated Mary Jean differently from his other children because she was married. In response to the question whether he felt he had a right to tell her what to do while she stayed in his home, he replied: "No, not really. I mean if I asked her to do something it would be different than asking the other girl to do it because . . . she is a married woman. She is a guest in my house . . .."

Mary Jean was a member of her husband's household and not of her father's. She had a husband from whom she was not separated except by geographical distance. Though physically absent from the Ramirez house, she remained a member of the Ramirez household. See *Hawaiian Insurance & Guaranty Company, Limited v. Federated*

*American Insurance Company*, 13 Wash. App. 7, 534 P.2d 48 (1975).

In granting defendants' cross-motion for summary judgment, the court further found that the exclusionary provision in Nationwide's policy is ambiguous as a matter of law. Nationwide argues that such language in the policy is unambiguous. In view of our holding that as a matter of law Mary Jean was not a "member of the household" we need not reach this issue.

Defendants Ramirez cross-appeal from the order of the court denying their petition for attorneys' fees, pursuant to A.R.S. § 12–341.01. We must first determine whether the cross-appeal was timely filed.

Final judgment in favor of Ramirez was entered on November 1, 1976. On November 12, 1976, the court denied Ramirez' petition for attorneys' fees. Nationwide moved for a new trial or judgment notwithstanding the verdict on November 16, 1976, and these motions were denied on December 21, 1976. Nationwide filed its notice of appeal on December 22, 1976. On January 17, 1977, twenty-seven days after the court's order denying Nationwide's motions, Ramirez filed a notice of cross-appeal.

Nationwide argues that the cross-appeal must have either been perfected within sixty days of the entry of the order denying attorney's fees, November 12, 1976, or within fifteen days of the perfection of Nationwide's appeal, December 22, 1976.

■ Rule 73(b)(1), Arizona Rules of Civil Procedure, 16 A.R.S., requires that the notice of appeal be filed within sixty days from the entry of the judgment appealed from. The filing of a motion for a new trial directed against a summary judgment extends the time for appeal and the sixty day period began running from the date Nationwide's motion was denied. *Maganas v. Northroup*, 112 Ariz. 46, 537 P.2d 595 (1975).

Rule 73(b)(1), Arizona Rules of Civil Procedure, provides that when an appeal is not perfected within forty-five days from the entry of the judgment or order appealed from, a cross appeal may be perfected by an opposing party within fifteen days from the date the appeal is perfected.

■ Thus, if Nationwide had waited until after the forty-five day deadline to file its notice of appeal, Ramirez' time would have been extended an additional fifteen days. The fifteen days filing period need not be observed when appellant's notice of appeal is filed prior to expiration of the forty-five day period, as it was here. Rules governing appeals are equally applicable to cross appeals. *Midway Lumber, Inc. v. Redman*, 4 Ariz.App. 471, 421 P.2d 904 (1967). Ramirez' cross-appeal was timely filed.

■ The court ruled that A.R.S. § 12–341.01 was "not applicable to the type of case involved herein." A.R.S. § 12–341.-01(A) reads, in pertinent part, "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." Ramirez does not contend that the court abused its discretion in failing to award attorney's fees to the defendants, but rather that it erred in ruling that a declaratory judgment action is not the type of case in which fees might be permitted by the statute. We agree with Ramirez.

The action arose out of a controversy between plaintiff Nationwide and defendants Ramirez and Granillo as to the meaning of an insurance policy. In its complaint for declaratory relief, Nationwide sought a determination that its policy of insurance, a contract, did not provide coverage for the accident out of which the tort action arose. This action was not brought to adjudicate facts and law regarding the tort, but rather to adjudicate facts and law regarding the insurance contract. Cf., *Amphitheater Public Schools and Francom v. Eastman*, 117 Ariz. 559, 574 P.2d 47 (1977.)

We do not agree with Nationwide's argument that a successful party defendant in a declaratory judgment action, in order to recover attorney's fees under the statute, must also be a party to the contract. There is nothing in the statute which mandates

the construction of "party" that Nationwide proposes.

In a report submitted by the chairman of the Debtors' Creditors' Rights Committee to the Arizona State Bar Association in the Arizona Bar Journal (Spring 1976), the intended scope of the statute is described:

> "A new statutory provision would allow, on a very limited basis, the prevailing party in disputed civil litigation to recover attorneys fees not expressly provided for by contract. Such fees could be recovered only when the action was in the nature of a contract and was disputed. The purpose of this section is to discourage unmeritorious litigation . . . and hopefully decrease the number of cases on the court's trial calendar."

The Ramirezes were joined as defendants in an action instituted by Nationwide. Though they prevailed, they were forced to incur legal expenses. A.R.S. § 12–341.01(B) reads, in part, "The award of reasonable attorney's fees should be made to mitigate the burden of the expense of litigation for a just claimant." The wording indicates that the statute was intended to be remedial. The purpose of the statute would be served by allowing a party such as the Ramirezes to recover attorney's fees.

The statute gives the trial court discretion whether to award attorney's fees in a particular case. We reverse and remand for such a determination.

Affirmed in part and reversed in part.

HOWARD, C. J., and RICHMOND, J., concurring.