729 P.2d 945

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**Sally Hastings JOHNSON, a single woman, Defendant-Appellee.**

**No. 1 CA–CIV 8591.**

Court of Appeals of Arizona, Division 1, Department B.

June 24, 1986.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by David M. Bell, Larry L. Smith, Steven J. Renshaw, Phoenix, for plaintiff-appellant.

Tucker & Jessen by Kenneth L. Tucker, Phoenix, for defendant-appellee.

OPINION

CONTRERAS, Judge.

The issue in this appeal is whether an exclusionary clause in an automobile insurance policy excluding liability coverage for bodily injury to "any ... family member of an insured residing in the same household as the insured" applied to a newlywed spouse who had not yet begun to live with the insured.[1] We conclude that the exclusionary clause does not apply and affirm the judgment.

The facts in this case are undisputed. On February 5, 1983, Sally Hastings Johnson flew with Glen Johnson to Las Vegas, Nevada, where they were married that afternoon. They spent the night of February 5 together at the M & M Hotel. They left Las Vegas the next evening with Glen's friend, James Nagle, who had offered them a ride in his Chevrolet van back to Mesa, Arizona, where Glen and Sally had each separately resided before their mar-

1. State Farm originally sought appeal of a second issue: whether the trial court erred in declaring Johnson entitled to benefits under her own State Farm automobile insurance policy for underinsured motorist coverage. We do not review this issue since both parties have advised us that the issue is moot and need not be considered.

riage. At about 1:00 a.m. on February 7, 1983, shortly after Glen had begun driving, the van left the road and overturned, killing Glen and injuring Sally.

At the time of the accident, James Nagle had an automobile insurance policy with appellant, State Farm Mutual Automobile Insurance Company, which provided liability coverage of $100,000 per person and $300,000 per accident. The policy excluded liability coverage for any insured other than the named insured, including any "family member of an insured residing in the same household as the insured." The policy defined "insured" to include any person using the van within the scope of Nagle's consent. Glen Johnson was therefore an "insured."

Sally Johnson sued her husband's estate for the injuries she sustained in the accident and received a judgment for $225,000. Sally sought to recover under Nagle's State Farm policy since her husband had been an insured while driving with Nagle's consent. The appellant then filed this action for a declaratory judgment that Sally Johnson was excluded from liability coverage under the exclusion for any "family member of an insured residing in the same household as the insured," except to the extent that liability coverage was required by law.

The parties filed cross-motions for summary judgment on the issue of whether the exclusion applied. Sally's deposition testimony and affidavit and the affidavit of Glen's mother established that Glen and Sally had never resided together but intended to do so soon after their marriage. Sally testified that she was living in an apartment with her brother in Mesa, Arizona, and that Glen had lived at another residence in Mesa. She stated that they had intended for Glen to move into her apartment after the marriage but not until her brother could relocate and not before the fifteenth of the month because Glen had paid rent through that date at his residence. She further stated that neither of them had even spent the night at the

residence of the other prior to their marriage.

The trial court found that Sally was entitled to a ruling as a matter of law that the exclusion did not apply to prevent her from obtaining the $100,000 liability coverage under the Nagle policy. State Farm argues on appeal that a fact question is presented concerning whether Sally Johnson was a member of her husband's household at the time of the accident and whether the exclusion applied to her.

The undisputed facts in this case reveal that Sally and her husband of less than two days had not established a common residence before their marriage and were unable to do so afterward due to his death. State Farm does not attempt to argue that the couple's single night together in Las Vegas was sufficient to establish a common residence. Instead, State Farm argues that it was unnecessary for Sally to have lived with her husband in order for her to come within the exclusion. State Farm contends that the mere fact of their marriage and an intimate relationship with the intent to reside together in the future was sufficient.

State Farm emphasizes the recognized purpose of the family member exclusion clause, which is to safeguard the insurer against the natural partiality of the insured to an injured claimant who is a member of the insured's family. *See, e.g., State Farm Mutual Automobile Insurance Company v. Thompson*, 372 F.2d 256 (9th Cir.1967); *Tomlyanovich v. Tomlyanovich*, 239 Minn. 250, 58 N.W.2d 855 (1953); 6C Appleman, *Insurance Law and Practice* § 4411 at 345 (1979). Since an insured's newlywed wife would naturally be among those persons most likely to be favored by the insured, State Farm reasons that Sally Johnson must fall within the family member exclusion clause.

We find State Farm's position to be untenable. It completely reads out of the exclusionary clause the words "residing in the same household as the insured." We do not find that any of the authorities cited by State Farm establish that a household is

created merely by a relationship without "living together" by the people involved. The term "household" is consistently defined to include the element of living together under the same roof. "Household" is defined as "those who *dwell under the same roof* and compose a family," or as "a domestic establishment" and "a social unit comprised of *those living together in the same dwelling place."* *Webster's Third New International Dictionary* 1096 (1969) (emphasis added).

As early as 1884, the United States Supreme Court defined household as "[p]ersons who *dwell* together as a family." *Arthur v. Morgan,* 112 U.S. 495, 5 S.Ct. 241, 28 L.Ed. 825 (1884) (emphasis added). In *Nationwide Mutual Insurance Company v. Granillo,* 117 Ariz. 389, 392, 573 P.2d 80, 83 (App.1977), Division Two of our court adopted a similar definition:

"Whether the term 'household' or 'family' is used, the term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof. ." *Lumbermens Mut. Casualty Co. v. Pulsifer,* [41 F.Supp. 249 (D.Me., S.D.1941)]; *Heard v. Farmers Insurance Exchange Company,* 17 Ariz. App. 193, 496 P.2d 619 (1972).

The clause in the Nagle policy not only referred to family members in a "household," but also required that the family members be *residing* in the same household. Typical definitions of "reside" include "to dwell permanently or continuously: have a settled abode for a time." *Webster's Third New International Dictionary* 1931 (1969).

State Farm has cited various cases showing that "living under the same roof" is not the only requirement in determining whether people are "residing in the same household." It has cited nothing to convince us, however, that the exclusion can apply where spouses have never, at any time, lived under the same roof. For example, in *Pamperin v. Milwaukee Mutual Insurance Company,* 55 Wis.2d 27, 37, 197 N.W.2d 783, 788–89 (1972), the Wisconsin Supreme Court formulated a three-factor test to determine if a person is a resident or member of a household:

(1) Living under the same roof; (2) in a close, intimate and informal relationship; and (3) where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship ". . . in contracting about such matters as insurance or in their conduct in reliance thereon."

The court stated that while no single factor is controlling, all of the elements must combine to a greater or lesser degree in order to establish the relationship. We find that this language clearly shows that the Wisconsin court required at least some "living together" at some time if persons were to be considered residents or members of a household. We note that the court in *Pamperin* also quoted from the earlier case of *Doern v. Crawford,* 30 Wis.2d 206, 140 N.W.2d 193 (1966), in which it had held that "[l]iving together under one roof is a factor to be considered and *must have occurred at some time."* *Pamperin,* 55 Wis.2d at 35–36, 197 N.W.2d at 788 (emphasis added).

The *Granillo* court focused on the "intended duration" element of the *Pamperin* test to determine whether a married woman temporarily living with her parents was a member of their household so as to be covered by her father's insurance policy. In that case, the woman and her husband had established their own household, but she was temporarily living with other family members while her husband served a period of time in Korea as part of his army duty. The court had no difficulty in finding that the woman remained a member of her husband's household instead of becoming a member of the household where she was temporarily residing.

The *Granillo* case does not support the position of State Farm. The husband and wife in *Granillo,* who were found to be members of the same household despite their geographical separation, had previ-

ously established their household by living together for a period of time. Unlike the Johnsons in the immediate case, they were not spouses who had never lived together.

In *Mid-Century Insurance Company v. Duzykowski*, 131 Ariz. 428, 641 P.2d 1272 (1982), the Arizona Supreme Court listed various factors to consider in determining whether an individual is a "resident of the same household":

> [T]he individual's presence in, or absence from, the named insured's home on the date of the occurrence; the reasons or circumstances relating to the absence or presence; the relationship of the individual to the name insured; living arrangements of the individual in earlier time periods; the individual's subjective or declared intent with respect to the place of residence; the existence of a second place of lodging.

131 Ariz. at 430, 641 P.2d at 1274. The issue in *Mid-Century* was whether an adult daughter was a member of her mother's household for purposes of coverage under her mother's insurance policy. The daughter had moved most of her belongings from her mother's home, had announced her intention to marry, and was spending nights at the home of her fiance's parents, but returned to her mother's house occasionally to visit, eat, and pick up mail and other items. Applying the above-mentioned factors to the facts presented, the court concluded that the daughter did not intend to be a member of her mother's household and that she did not come within her mother's insurance coverage for a "resident of the same household."

In *Mid-Century*, the issue of whether the daughter was a resident of the mother's household arose only because she had lived there previously and there was some evidence that she continued to do so. If she had never resided with her mother, the issue would not have arisen. No fact issue arises as to whether Sally Johnson was "residing in the same household" as her husband because she had never had the opportunity to start living with him. Therefore, *Mid-Century* is not of signifi-

cant guidance under the unusual factual circumstances of the immediate case. Application of the *Mid-Century* factors would, however, indicate that Sally was not a "resident of the same household" as her husband.

State Farm correctly states that courts try to effectuate the purpose of an exclusionary clause. The Arizona courts have repeatedly stated that words in an exclusionary clause should be given their ordinary meaning in order to effectuate the purpose of the exclusion. *Estrada v. Planet Insurance Company*, 26 Ariz.App. 103, 546 P.2d 372 (1976); *Dykeman v. Mission Insurance Company*, 12 Ariz.App. 432, 471 P.2d 317 (1970). That does not mean, however, that courts will ignore language or distort its meaning in order to give effect to an exclusionary clause. Arizona case law holds that if an insurer desires to limit its liability under a policy, it should use language which clearly and distinctly communicates to the insured the nature of the limitation. *Transamerica Insurance Company v. McKee*, 27 Ariz. App. 158, 551 P.2d 1324 (1976). If State Farm did not mean to exclude only the family members who at some time or to some extent were "residing in the same household as the insured," it should not have used this language in the clause. As indicated previously, the meaning of this language is clear and unambiguous. Where the meaning and intent of a clause in an insurance policy is clear, it is not the prerogative of the court to rewrite the contract. *Mission Insurance Company v. Nethers*, 119 Ariz. 405, 581 P.2d 250 (App. 1978).

For the reasons stated herein, we affirm the ruling of the trial court.

JACOBSON, P.J., and CORCORAN, J., concur.