NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CELESTINA MAJERLE, *Plaintiff/Appellee/Cross-Appellant*,

*v.*

RAY ZIMMERMAN, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 20-0126
FILED 12-17-2020

Appeal from the Superior Court in Maricopa County
No. CV2017-001883
The Honorable Teresa A. Sanders, Judge

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**

COUNSEL

Jaburg & Wilk, P.C., Phoenix
By Roger L. Cohen, Kathi Mann Sandweiss
*Counsel for Plaintiff/Appellee/Cross-Appellant*

Brentwood Law Group, PLLC, Tempe
By Stephen Brower
*Counsel for Defendants/Appellants/Cross-Appellees*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge James B. Morse Jr. and Judge Maria Elena Cruz joined.

---

**M c M U R D I E**, Judge:

¶1 Appellee/Cross-Appellant Celestina Majerle challenges the summary judgment granted in favor of Kelly M. Dwyer Trust No. 1 and Shannon M. Dwyer Trust No. 1 (collectively the "Trusts"). Appellant/Cross-Appellee Ray Zimmerman, as trustee of the Trusts, challenges the order denying the Trusts' attorney's fees claim. For the reasons set forth below, we affirm the summary judgment, vacate the fees ruling, and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Michael J. Dwyer is the trustee of the Michael J. Dwyer Trust U/A/D 11-24-09 (the "Michael Dwyer Trust") and the sole general partner of Dwyer Investments Limited Partnership (the "Partnership"). The Michael Dwyer Trust holds limited partner units in the Partnership. The Trusts, which were established for Dwyer's two daughters, also hold limited partner units in the Partnership.

¶3 Majerle and Dwyer married in December 2010 and divorced by consent decree in August 2017. Majerle sued Dwyer and the Partnership approximately six months before the entry of the decree. She alleged Dwyer asked her in 2010 to sell $1.1 million in separate investments to contribute to a down payment on their contemplated marital home. In exchange, Dwyer agreed to give her 50 percent ownership interest of a home in Idaho owned by the Partnership (the "Idaho Property"). She attached to her complaint an "Assignment of Limited Partner Interest" (the "Assignment") in which (1) the Michael Dwyer Trust purported to assign 44,690 limited partner units in the Partnership to Majerle and (2) Dwyer, as general partner, approved the transaction. She also attached a "Combined Restated Certificate of Limited Partnership & Statement of Qualification" (the "Certificate") showing that she and the Michael Dwyer Trust each held 44,690 limited partner units in the Partnership, and the Trusts each held 4,810 limited partner units.

¶4          Majerle alleged she later learned that the Assignment did not convey any ownership interest in the Idaho Property. She further alleged the Partnership "does not carry on any business" and "has never conducted any business." On those bases, she sought judicial dissolution of the Partnership, damages, and equitable relief against Dwyer.

¶5          Following an unsuccessful motion to dismiss, Dwyer answered and asserted that Majerle had failed to join indispensable parties needed for the Partnership's judicial dissolution—namely, the Trusts. Majerle moved for judgment on the pleadings on this defense and alternatively moved to amend her complaint to add the Trusts. The superior court granted leave to amend the complaint. At that point, Majerle added the Trusts as parties and a declaratory relief claim against them and Dwyer, alleging that she became a limited partner in the Partnership upon receiving the Assignment.

¶6          The Trusts moved for summary judgment on both claims asserted against them: declaratory relief and judicial dissolution. The Trusts argued Majerle never became a limited partner and lacked standing to judicially dissolve the Partnership because the Trusts never consented to the transaction between her and Dwyer. Citing the Partnership's "Restated Limited Partnership Agreement" (the "Partnership Agreement"), the court determined that "no partner may transfer any portion of his units without the unanimous prior written consent of the General Partner and the prior written consent of a majority-in-interest of the Limited Partners" and granted the Trusts' motion. The court also granted summary judgment to Dwyer on the same two claims and Majerle's claim for specific performance of the Assignment. Still, it noted that its ruling "does not affect [Majerle's] ability to seek monetary damages from . . . Dwyer in any way."

¶7          The superior court entered a final judgment under Arizona Rule of Civil Procedure 54(b) only on the claims against the Trusts. It denied the Trusts' attorney's fees claim, finding that they were "not entitled" to an award of attorney's fees under A.R.S. § 12-341.01(A). The Trusts appealed the denial of their fees claim, and Majerle appealed the judgment.

## JURISDICTION

¶8          Majerle contends the superior court improperly certified the judgment regarding the Trusts under Rule 54(b). We address this issue first because we must dismiss appeals over which we lack jurisdiction. *Dabrowski v. Bartlett*, 246 Ariz. 504, 511, ¶ 13 (App. 2019).

**A.**     **Majerle Had Notice of and an Opportunity to Object to the Proposed Form of Judgment.**

**¶9**      Majerle first contends the Trusts "violated the applicable Rules that would have given [her] notice and opportunity to object to the [proposed] form of Judgment," citing Rules 58(a), 54(h), and 5.1(d). Rule 58(a)(1) states that proposed forms of judgment "must be served on all parties and must comply with Rule 5.1(d) and 54(h)." Rule 54(h)(1)(A) requires that attorney's fees and costs claims be resolved before any judgment is entered under Rule 54(b). And Rule 5.1(d)(1) requires that a proposed judgment be "prepared and submitted as a separate document and may not be included as an integral part of a motion, stipulation, or other document." Finally, Rule 58(a)(2) states that judgment may not be entered until five days after the proposed form is filed absent endorsement by the opposing party, waiver or shortening of the period for good cause, or default by the opposing party.

**¶10**      Majerle contends the Trusts violated these Rules by attaching their proposed form of judgment to their fee application. She does not contend that she did not receive the fee application or the proposed form of judgment. She instead argues she was under no obligation to object to the proposed form until after the court ruled on the Trust's fees claim. None of the rules on which she relies supports this contention. Indeed, Rule 54(g)(3)(A)(i) expressly contemplates that a party seeking a Rule 54(b) judgment can apply for fees "within 20 days *after* service of the motion or proposed form of judgment" unless the court orders otherwise. (Emphasis added.)

**¶11**      Majerle also argues that requiring parties "to object to a form of judgment before the trial court ha[s] even ruled on the application for attorney fees" would "lead to a multiplicity of pointless objections, since a party would be required to object to the form of judgment while its substantive terms remain unresolved." But Rule 54(h)(2)(a) allows parties to submit proposed forms of judgment that include either "the specific sum of attorney's fees awarded by the court, or . . . a blank . . . to allow the court to include an amount for any attorney's fees." As such, a party may submit a proposed form of judgment *before* the court rules on a pending fee claim. Here, the Trusts submitted their proposed form at the same time as their fee application.

**¶12**      Moreover, Majerle's objection and the court's fees ruling were unrelated. Majerle's contention is "the inclusion of Rule 54(b) language was

grossly inappropriate, given the overall posture of the litigation." This argument has nothing to do with the fees award.

## B.    Majerle Did Not Waive Her Objection.

¶13        We next consider the Trusts' position that Majerle waived her objection by not timely raising it and not requesting that she be allowed to respond to the form of judgment after the trial court resolved the fee application or objecting to the Trusts' inclusion of Rule 54(b) language. Arguments raised for the first time on appeal are untimely and typically deemed waived. *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007). But this rule is procedural, not jurisdictional. *Id.*

¶14        Majerle's objection, if correct, would deprive us of jurisdiction. We, therefore, decline to apply waiver. *See Natale v. Natale*, 234 Ariz. 507, 509, ¶ 8 (App. 2014) ("Just as appellate jurisdiction cannot be created by agreement of the parties, the absence of appellate jurisdiction cannot be waived.") (citations omitted).

## C.    Rule 54(b) Certification Was Proper.

¶15        We turn to the merits of Majerle's objection. Our jurisdiction is generally limited to appeals from final judgments that dispose of all claims and all parties. *Dabrowski*, 246 Ariz. at 511, ¶ 13. Rule 54(b) creates an exception under which the court may "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines there is no just reason for delay and recites that the judgment is entered under Rule 54(b)." Certification is appropriate for claims that are separable from those remaining to be adjudicated. In other words, where the nature of the claim is "such that no appellate court would have to decide the same issues more than once even if there are subsequent appeals." *Dabrowski*, 246 Ariz. at 512, ¶ 14 (quoting *Cont'l Cas. v. Superior Court*, 130 Ariz. 189, 191 (1981)). We review the superior court's certification decision *de novo*. *Id*. at 511, ¶ 13.

¶16        Majerle contends her claims against the Trusts are not separable from her claims against Dwyer. Noting that the superior court did not certify its summary judgment ruling on the same claims for Dwyer, she contends "[i]t is possible that the trial court, on hearing the evidence at trial, seeing in person the Assignment Documents and the Partnership Agreement, and assessing the parties' credibility, will determine that Mr. Dwyer did have actual or apparent authority to assign [her] a limited partnership interest in the Partnership." But the court expressly found that "Mr. Dwyer was not authorized to convey any limited partner units to

Plaintiff, and any attempt to do so is rendered void pursuant to the Partnership Agreement." Majerle did not identify any evidence that could lead the court to change its finding on this issue. Majerle instead focused on Dwyer's representations to her, which have no bearing on whether he was authorized to assign the Michael Dwyer Trust's units under the Partnership Agreement.

¶17 Majerle also contends Rule 54(b) certification was improper because she plans to "rely on the . . . ruling to demonstrate the causes of action for fraud and breach of contract against Mr. Dwyer." She cites no authority suggesting she could not use the judgment to support her remaining claims had it not been certified under Rule 54(b).

¶18 Majerle also points out that "a different judge will hear the remaining claims as well as consider the interlocutory summary judgment decision regarding Mr. Dwyer's authority" following a June 2020 judicial rotation. She thus speculates that either she or Dwyer may choose to pursue a horizontal appeal on the declaratory relief or judicial dissolution claims, which would be improper. *See, e.g.*, *Donlann v. Macgurn*, 203 Ariz. 380, 385, ¶ 29 (App. 2002) ("A horizontal appeal is a request that 'a second trial judge [] reconsider the decision of the first trial judge in the same matter, even though no new circumstances have arisen in the interim and no other reason justifies reconsideration.'") (alteration in original) (quoting *Powell-Cerkoney v. TCR–Mont. Ranch Joint Venture, II*, 176 Ariz. 275, 278–79 (App. 1993)). And the June 2020 rotation is irrelevant because our decision in this appeal will constitute the law of the case going forward. *See Emps. Mut. Liab. Ins. Co. of Wis. v. Indus. Comm'n*, 115 Ariz. 439, 441 (App. 1977) ("[I]f an appellate court has ruled upon a legal question and remanded for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case.").

¶19 We conclude that the court correctly certified the Trusts' judgment under Rule 54(b), and we have jurisdiction over the parties' appeal and cross-appeal. A.R.S. § 12-2101(A)(1).

## DISCUSSION

**A.    The Court Did Not Err by Granting Summary Judgment to the Trusts.**

¶20 On reviewing a grant of summary judgment, we determine *de novo* whether any genuine issues of material fact exist and whether the superior court correctly applied the law. *Sign Here Petitions LLC v. Chavez*,

243 Ariz. 99, 104, ¶ 13 (App. 2017). We view the facts and reasonable inferences in the light most favorable to Majerle as the non-prevailing party. *Rasor v. Nw. Hosp., LLC*, 243 Ariz. 160, 163, ¶ 11 (2017). Summary judgment should be granted only "if the facts produced in support of [a] claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

¶21        Majerle contends Dwyer had actual authority to assign the limited partnership units at issue, citing section 10.9 of the Partnership Agreement. Actual authority "may be proved by direct evidence of express contract of agency between the principal and agent or by proof of facts implying such contract or the ratification thereof." *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 597, ¶ 29 (App. 2007) (quoting *Corral v. Fid. Bankers Life Ins.*, 129 Ariz. 323, 326 (App. 1981)).

¶22        Section 10.9 provides:

> Any persons or entity dealing with the Partnership may rely on a certificate signed by any General Partner hereunder:
>
>> (A) As to who are the Partners hereunder;
>>
>> (B) As to the existence or non-existence of any fact or facts which constitute conditions precedent to acts by the Partners or are in any other manner germane to the affairs of this Partnership;
>>
>> (D) [sic] As to who is authorized to execute and deliver any instrument or document of the Partnership;
>>
>> (E) As to the authenticity and completeness of any copy of this Agreement and amendments thereto; and/or
>>
>> (F) As to any act or failure to act by the Partnership or as to any other matter whatsoever involving the Partnership or any Partner.
>
> The statement of a General Partner that said General Partner is acting in accordance with the provisions of this Agreement shall fully protect all persons dealing with said General Partner.

But section 12.5(C) provides:

> *Notwithstanding any other provision of this Agreement* (except as may otherwise be provided for in Section 12.6, below), no Partner shall be entitled to transfer, assign or encumber all or any portion of his/her/its Units in the Partnership without the unanimous prior written consent of the General Partner and the prior written consent of a majority-in-interest of the Limited Partners (any of which may be withheld for any reason or no reason). Any unauthorized attempt to so transfer or encumber a Partner's Units shall be void.

(Emphasis added.) And section 12.8 further provides that "no additional Partners shall be admitted to the Partnership without the prior written consent of a majority-in-interest of the Partners." Section 7.9 defines "majority-in-interest" to mean either 94 or 99 percent of all outstanding limited partner units.[1]

**¶23** The Michael Dwyer Trust did not hold a "majority-in-interest" because the Trusts held 9.62 percent of the limited partner units at the time of the Assignment. Majerle offered no evidence to refute the Trusts' statement that they did not consent to her admission as a limited partner. Absent their written consent, the Assignment did not comply with the Partnership Agreement and is void.

**¶24** Majerle also argues the Trusts led her to believe Dwyer was the Partnership's agent, giving him apparent authority to convey the limited partnership units. But she does not contend the Trusts made any representations to her, much less a representation that Dwyer could consent to the Assignment on their behalf. She instead relies on section 10.9 but admits she was not aware of it when she received the Assignment. *See, e.g.,*

---

[1] The "Restated Limited Partnership Agreement" signed and dated May 23, 2008, defines "majority-in-interest" as "the Limited Partner (or Limited Partners) holding not less than Ninety-nine percent (99%) of all of the outstanding Limited Partner Units." A later unsigned and undated "Restated Limited Partnership Agreement" defines "majority-in-interest" as "the Limited Partner (or Limited Partners) holding not less than Ninety-four percent (94%) of all of the outstanding Limited Partner Units." We need not decide which of these agreements is effective because the Trusts held more than six percent of the limited partnership units at the time of the Assignment.

*Escareno v. Kindred Nursing Ctrs. W., L.L.C.*, 239 Ariz. 126, 130, ¶ 8 (App. 2016) ("Apparent authority . . . arises when 'the principal has intentionally or inadvertently induced third persons to believe that such a person was [its] agent although no actual or express authority was conferred on him as agent.'") (quoting *Reed v. Gershweir*, 160 Ariz. 203, 205 (App. 1989)). It thus does not support her apparent authority theory.

¶25 Majerle also contends fact questions remain as to her judicial dissolution claim because "evidence was presented that the Partnership fails to manage its real property in a businesslike manner to generate income or profits, and is a sham, existing solely as a vehicle to hold Mr. Dwyer's personal vacation property." As explained above, she never became a partner in the Partnership. Therefore, she cannot dissolve it. A.R.S. § 29-345.

**B.     A.R.S. § 12-341.01(A) Applies to Majerle's Claims Against the Trusts.**

¶26 The Trusts challenge the superior court's ruling denying attorney's fees under A.R.S. § 12-341.01(A), which permits a discretionary award to the successful party in an action arising out of a contract. We generally review the denial of attorney's fees for an abuse of discretion, but whether A.R.S. § 12-341.01(A) applies is a question of law we review *de novo*. *Tucson Estates Prop. Owners Ass'n, Inc. v. McGovern*, 239 Ariz. 52, 54, ¶ 7 (App. 2016).

¶27 We interpret the phrase "arising out of contract" broadly. *Marcus v. Fox*, 150 Ariz. 333, 334 (1986). Generally, an action arises out of contract if the allegedly breached duty was created by a contractual relationship and would not have existed but for the contract. *Assyia v. State Farm Mut. Auto. Ins.*, 229 Ariz. 216, 220, ¶ 12 (App. 2012). The Trusts contend Majerle's claims arose out of the Partnership Agreement because she "had no relationship with the Trusts other than her purported interest in the Partnership." But Majerle argues her claims against the Trusts did not depend on the Partnership Agreement because she did not sign or receive it at the time of the Assignment.

¶28 That Majerle was not a party to the Partnership Agreement does not foreclose the recovery of fees. *See Schwab Sales, Inc. v. GN Const. Co.*, 196 Ariz. 33, 37, ¶ 12 (App. 1998) ("[A] cause of action may arise out of a contract even if one of the litigants was not a party to the contract."). Moreover, she extensively cited the Partnership Agreement in her operative complaint and later acknowledged that her claims against the Trusts arose

out of another contract—the Assignment. For these reasons, A.R.S. § 12-341.01(A) applies. *See Chaurasia v. General Motors Corp.*, 212 Ariz. 18, 26, ¶ 25 (App. 2006) ("The contract must have some causal connection with the claim to justify an award of attorneys' fees.").

**¶29**      Majerle also contends that neither Arizona's Uniform Declaratory Judgments Act nor the limited partnership statutes authorize a fee award. We have allowed the recovery of attorney's fees on declaratory relief claims that arise out of contract where the prevailing party was not a party to the contract. *Nationwide Mut. Ins. v. Granillo*, 117 Ariz. 389, 394–95 (App. 1977). We also have awarded attorney's fees in disputes arising out of a partnership agreement. *Johnson v. Brimlow*, 164 Ariz. 218, 222 (App. 1990); *see also Jerman v. O'Leary*, 145 Ariz. 397, 403 (App. 1985) ("Because the relationship between the parties was founded on the partnership contract, it is proper to award attorney's fees pursuant to A.R.S. § 12-341.01.").

**¶30**      There is no statutory bar to a fees award in this case. The superior court held that the Trusts were "not entitled" to fees. It is unclear if the court was exercising its discretion to deny fees or finding a statutory bar. To the extent the court found the latter, we vacate the order and remand for the court to reconsider the fees award.

## ATTORNEY'S FEES AND COSTS

**¶31**      Both sides request their attorney's fees incurred in this appeal and cross-appeal under A.R.S. § 12-341.01(A). The Trusts may recover reasonable attorney's fees and taxable costs incurred in this appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21. We deny Majerle's request because she is not a successful party.

## CONCLUSION

**¶32**      We affirm summary judgment in favor of the Trusts, vacate the order denying attorney's fees, and remand to allow the superior court to determine, in its discretion, whether to award reasonable fees. *Nationwide*, 117 Ariz. at 395.

